**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SPECIALTY MEDICAL DRUGSTORE, LLC D/B/A GOGOMEDS, | ) ) ) | Case No:  21-CV-10599 |
| Plaintiff, | ) ) ) | COMPLAINT |
| -v- | ) ) | |
| LIFEMD, INC., | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) ) ) | |

Plaintiff Specialty Medical Drugstore, LLC d/b/a GoGoMeds, by and through counsel,
for its Complaint against defendant LifeMD, Inc., alleges as follows

**NATURE OF THE CLAIM**

1.      Plaintiff Specialty Medical Drugstore, LLC d/b/a GoGoMeds ("GoGoMeds")
brings this action against LifeMD, Inc. ("LifeMD") for LifeMD's failure to compensate
GoGoMeds for the work GoGoMeds performed for LifeMD.

2.      In 2019, GoGoMeds and a subsidiary of LifeMD entered into an agreement
pursuant to which GoGoMeds would fill and ship prescriptions for clients of LifeMD's
subsidiary and would be paid a dispensing fee based on the number of prescriptions dispensed.
GoGoMeds and LifeMD continued this arrangement after LifeMD dissolved the subsidiary.
Despite the fact that GoGoMeds dutifully performed its obligations and filled prescriptions for
LifeMD, LifeMD sent GoGoMeds notice on October 11, 2021 purporting to terminate their
relationship effective immediately.  At the time, LifeMD still had pending prescription orders
with GoGoMeds which GoGoMeds fulfilled.

11020589.4

3.      GoGoMeds sent LifeMD invoices totaling over $270,000 for the remaining work

it performed, but LifeMD has refused and failed to pay those invoices.  To date, GoGoMeds has

received no compensation for the orders it fulfilled for LifeMD in connection with those

invoices.

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff GoGoMeds is an Ohio limited liability company with offices at 525

Alexandria Pike, Suite 100, Southgate Kentucky 41071.  None of the members of GoGoMeds

are residents of Delaware or New York.

2.      Defendant LifeMD is a Delaware corporation with its principal place of business

located at 800 Third Avenue, Suite 2800, New York, NY 10022.

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).  The amount in

controversy exceeds $75,000.

4.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

5.      GoGoMeds owns and operates an online pharmacy business that is licensed to

dispense and ship prescription drugs directly to consumers in all 50 states.

6.      LifeMD, formerly known as Conversion Labs, Inc., offers online access to

medical professionals for its clients, including to physicians who may prescribe medications to

those clients.  LifeMD, however, is not a licensed pharmacy and cannot fill those prescriptions

directly.

7.      On May 27, 2019, GoGoMeds and Conversion Labs Rx, a subsidiary of

LifeMD's predecessor Conversion Labs, Inc., entered into a Strategic Partnership Agreement

("SPA").  A copy of the SPA is attached hereto as Exhibit A.  Under the SPA, the parties agreed

11020589.4

that GoGoMeds would use its existing online pharmacy infrastructure to fill and ship

prescriptions sold by Conversion Labs Rx.  That enabled Conversion Labs Rx to offer a seamless

telemedicine and online mail-order pharmacy service to prospective patients without incurring

the substantial cost and delay associated with establishing and properly licensing its own

pharmacy.

8.      Under the SPA, Conversion Labs Rx agreed to pay GoGoMeds (a) a dispensing

fee for each prescription, (b) the actual costs of all prescription and over the counter drugs sold,

and (c) all shipping costs.  *See* Ex. A, ¶¶ 1.3, 1.4 and Exhibit A.

9.      GoGoMeds agreed to send invoices on a bi-monthly basis, and Conversion Labs

Rx agreed to pay GoGoMeds within 5 business days of receiving the invoice.  *See id.*, ¶ 2.1.

10.     The SPA provides that either party may terminate the SPA if the other party

materially breaches the SPA and does not cure that breach within 30 days of written notice of

such breach.  *See id.*, ¶ 3.

11.     The SPA is binding on the parties and their successors.  *See id.*, ¶ 4.11.

12.     The SPA provides that it is governed by the laws of the States of Kentucky. *See*

*id.*, ¶ 4.14.

13.     At the time of the SPA, LifeMD and its subsidiaries did not have meaningful

experience shipping prescriptions, nor did they have the necessary infrastructure or required

licenses to do so.

14.     At LifeMD's request, GoGoMeds agreed to prioritize LifeMD's orders so that

they were fulfilled promptly.  This required GoGoMeds to retain additional personnel and

expend additional resources to ensure that LifeMD's prescriptions were prioritized and filled

11020589.4

quickly.   For example, GoGoMeds added personnel to cover a Saturday shift dedicated solely to LifeMD.

15.     On information and belief, in or about May 2020, LifeMD dissolved Conversion Labs Rx, and the business conducted by Conversion Labs Rx was conducted directly by LifeMD from that point forward.  After the dissolution of Conversion Labs Rx, LifeMD continued to have GoGoMeds fill prescriptions for LifeMD's clients, GoGoMeds issued invoices directly to LifeMD, and (until October of 2021) LifeMD promptly paid invoices issued by GoGoMeds.

16.     Since in or about May 2019, GoGoMeds fulfilled prescriptions for LifeMD (or its subsidiary).  As standard business practice, and consistent with the SPA, GoGoMeds sent invoices on a bi-monthly basis, and LifeMD (or its subsidiary) promptly paid those invoices.

17.     On October 12, 2021, LifeMD sent GoGoMeds a letter terminating all new business with GoGoMeds effective as of that date.  LifeMD did not claim that GoGoMeds had materially breached the SPA, nor did it provide 30 days' notice of termination.

18.     The letter confirmed that LifeMD expected that "GoGoMeds will timely complete any pending orders (per original order terms) from LifeMD that have not been filled."  A copy of the letter is attached hereto as Exhibit B.

19.     GoGoMeds filled all open prescription orders and refills for LifeMD.  Consistent with its practice throughout the entire relationship, GoGoMeds sent LifeMD two invoices for that work on October 15, 2021.  Invoice 3269 was for $273,360.39 and Invoice 3270 was for $499.56, totaling $273,859.95.  A copy of Invoice 3269 is attached hereto as Exhibit C and a copy of Invoice 3270 is attached hereto as Exhibit D.

20.     LifeMD has not disputed the amounts in the invoices or claimed that the invoices are improper or inappropriate.

21.     Nonetheless, LifeMD refused to pay the invoices.  As of the date of the filing of this complaint, LifeMD has not paid the invoices.

22.     LifeMD claimed that it was not going to pay the invoices because it believed that GoGoMeds was going to try to use information GoGoMeds received in connection with the prescriptions it filled to retain some of LifeMD's patients after the termination.  This is false, but, even if it were true, LifeMD would still have an obligation to pay the outstanding invoices.  LifeMD also demanded that GoGoMeds turn over to LifeMD information GoGoMeds had received in connection with filling prescriptions for LifeMD clients.

23.     Tellingly, neither the SPA nor any other agreement between GoGoMeds and LifeMD (or its predecessors) requires GoGoMeds to provide any information to LifeMD or limits GoGoMeds' use of that information. Nonetheless, GoGoMeds has not used that information except to fulfill prior prescriptions or refills for LifeMD's clients.

24.     LifeMD has no legal or contractual basis for refusing to pay GoGoMeds the almost $275,000 reflected in the invoices that it owes GoGoMeds.  GoGoMeds filled all open orders from LifeMD, even after LifeMD terminated their relationship, as requested by LifeMD. *See* Ex. B.  LifeMD has not claimed that the prices or items were wrong or that GoGoMeds did not provide the requested services.

25.     LifeMD's actions have not only deprived GoGoMeds of this revenue, but they have also interfered with another transaction contemplated by GoGoMeds.  In the late summer of 2021, GoGoMeds was in discussions with a third-party that was interested in purchasing GoGoMeds.  As part of that third-party's due diligence, GoGoMeds asked LifeMD for a forecast of the prescriptions that LifeMD would have GoGoMeds fulfill over the following year.  Justin Schreiber, the President of LifeMD, assured representatives from GoGoMeds on a phone call on

11020589.4

August 16, 2021 that the level of business between LifeMD and GoGoMeds would either remain steady or increase over the next year.

26.     GoGoMeds justifiably relied on this representation from LifeMD and provided this information to the third-party purchaser as part of its due diligence.

27.     However, on information and belief, LifeMD was planning at that time to have other pharmacies fill its prescriptions and to terminate its relationship with GoGoMeds, and LifeMD thus knew that its representation that business would remain at the same level or increase was false.  When the third-party purchaser learned that LifeMD had terminated its relationship with GoGoMeds despite LifeMD's earlier assurance that business would remain at least steady for the following year, the third-party ended negotiations to purchase GoGoMeds. Because of LifeMD's misrepresentation, GoGoMeds was left unprepared, lost credibility with the third-party purchaser when its assurances about LifeMD's ongoing business were not realized and was unable to salvage those negotiations.

## CAUSES OF ACTION

## COUNT I – BREACH OF CONTRACT

28.     GoGoMeds incorporates by reference the prior paragraphs as if fully set forth herein.

29.     GoGoMeds and Conversion Labs Rx -- a subsidiary of LifeMD that, on information and belief, was voluntarily dissolved by LifeMD -- are parties to the SPA.

30.     LifeMD is the successor to Conversion Labs Rx, and LifeMD continued to perform under the SPA when it dissolved Conversion Labs Rx.

31.     The SPA requires LifeMD to pay GoGoMeds for the actual costs of all prescriptions and over the counter drugs, the shipping costs of those prescriptions and over the counter drugs, and a dispensing fee for each order filled.

32.     The parties performed under the SPA until LifeMD unilaterally purported to terminate the arrangement effective immediately on October 11, 2021.

33.     As requested by LifeMD, GoGoMeds completed filling all outstanding prescriptions, orders and refills for LifeMD clients.

34.     GoGoMeds sent LifeMD two invoices for the services it provided for a total amount of $273,859.95.  *See* Exs. C and D.

35.     LifeMD received the invoices, and has not claimed that GoGoMeds did not perform the invoiced services, nor has LifeMD contested or objected to the amounts due.

36.     LifeMD, without basis or valid justification, has refused to pay GoGoMeds the amount it owes GoGoMeds as reflected in the invoices.

37.     GoGoMeds fulfilled its obligations under the SPA.

38.     LifeMD has failed to fulfill its obligation under the SPA because it failed to pay GoGoMeds within five days of receiving the invoices.  *See* Ex. B, ¶ 2.1.

39.     LifeMD breached the SPA by purporting to terminate the SPA even though GoGoMeds did not materially breach the SPA and without the 30 days' notice that is required if GoGoMeds had materially breached the agreement (which it did not).  If LifeMD had not breached the termination provision of the SPA, GoGoMeds would continue to fulfill prescriptions for LifeMD.  If LifeMD had provided 30 days' notice of termination, GoGoMeds would have continued to fill or refill prescriptions for LifeMD's clients during that period and would have been entitled to additional revenue from LifeMD.  LifeMD's failure to comply with

this provision (including its failure to give the required 30 days' notice) deprived GoGoMeds of this opportunity and corresponding revenue.

40.     As a direct and proximate result of LifeMD's breach, GoGoMeds has incurred damages in excess of $273,859.95, with the exact amount to be determined with specificity at trial.

## COUNT II – UNJUST ENRICHMENT

41.     GoGoMeds incorporates by reference the prior paragraphs as if fully set forth herein.

42.     To the extent that the SPA is inapplicable, GoGoMeds is entitled to recover from LifeMD for unjust enrichment.

43.     GoGoMeds conferred a benefit on LifeMD by fulfilling LifeMD's open prescription and over the counter drug orders.

44.     GoGoMeds paid the cost of goods, shipping charges, and fees for all of the prescriptions and over the counter orders that it fulfilled for LifeMD.

45.     LifeMD was enriched when its clients received over 17,000 prescriptions or over the counter drug orders from GoGoMeds and then refused to pay GoGoMeds for those prescriptions or orders.

46.     On information and belief, LifeMD's clients have paid or will pay (directly or through insurance or other sources) LifeMD for those prescriptions and over the counter drugs.

47.     Under the circumstances, it would be inequitable and unconscionable to permit LifeMD to benefit by keeping all of the revenue and other benefits from orders filled by GoGoMeds without paying anything for them.

48.     LifeMD has been unjustly enriched in an amount in excess of $273,859.95, with the exact amount to be determined with specificity at trial.

## COUNT III –QUANTUM MERUIT

49.     GoGoMeds incorporates by reference the prior paragraphs as if fully set forth herein.

50.     To the extent that the SPA is inapplicable, GoGoMeds is entitled to recover from LifeMD for quantum meruit.

51.     GoGoMeds conferred a benefit on LifeMD by fulfilling over 17,000 prescriptions and over the counter drug orders for LifeMD's clients.

52.     GoGoMeds sent LifeMD invoices for these orders reflecting the actual costs of goods to GoGoMeds, the shipping costs incurred by GoGoMeds, and a fee for the services performed by GoGoMeds.

53.     LifeMD has not paid GoGoMeds any compensation for its orders.

54.     On information and belief, LifeMD's clients have paid or will pay (directly or through insurance or other sources) LifeMD for those prescriptions and over the counter drugs.

55.     Under the circumstances, it would be inequitable and unconscionable to permit LifeMD to benefit by keeping the revenue and other benefits from the orders filled by GoGoMeds without awarding GoGoMeds just compensation.

56.     GoGoMeds is entitled to the fair value of the goods and services it provided.

57.     LifeMD should compensate GoGoMeds in an amount in excess of $273,859.95, with the exact amount to be determined with specificity at trial.

## COUNT IV – ACCOUNT STATED

58.     GoGoMeds incorporates by reference the prior paragraphs as if fully set forth herein.

59.     GoGoMeds sent true and correct invoices to LifeMD on October 15, 2021 for a total amount of $273,859.95.

60.     LifeMD has previously paid all other invoices sent to it by GoGoMeds for the same goods and services at the same rates.

61.     There is no dispute or disagreement that GoGoMeds actually provided the goods and services reflected in the invoices.

62.     LifeMD has not contested or disputed the amounts of the invoices.

63.     Accordingly, there is an account stated between GoGoMeds and LifeMD for $273,859.95.

## DEMAND FOR TRIAL BY JURY

64.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, GoGoMeds demands a trial by jury on any issue so triable.

## PRAYER FOR RELIEF

WHEREFORE, GoGoMeds prays as follows:

1.     For a judgment awarding monetary damages for LifeMD's breach of contract in an amount to be determined at trial, but not less than $273,859.95;

2.     For a judgment awarding monetary damages for LifeMD's unjust enrichment in an amount to be determined at trial, but not less than $273,859.95;

3.     For a judgment awarding monetary damages to GoGoMeds under the doctrine of quantum meruit in an amount to be determined at trial, but not less than $273,859.95;

10

4.	For a judgment awarding monetary damages to GoGoMeds under the doctrine of account stated in the amount of $273,859.95;

5.	For a judgment awarding pre- and post- judgment-interest, costs, and to the extent available under applicable law, attorneys' fees;

6.	For such further and additional relief as the Court deems equitable, just, and proper.

Dated: December 10, 2021

CARTER LEDYARD & MILBURN LLP


By:  /s/ Jeffrey S. Boxer
	Jeffrey S. Boxer
	Meredith B. Spelman
Two Wall Street
New York, NY 10005
Telephone: (212) 732-3200
Email: boxer@clm.com
	spelman@clm.com
*Attorneys for Plaintiff*

11